THOMAS E. SHUCK, SBN 116228
PARKER, MILLIKEN, CLARK,
O'HARA & SAMUELIAN
A Professional Corporation
515 South Figueroa Street, 8th Floor
Los Angeles, California 90071-3325
Telephone:   (213) 683-6500
Facsimile:   (213) 683-6669
Email:  tshuck@pmcos.com

Attorneys for Defendant/Judgment Debtor
JASON CLOTH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SCOT BUILDING VENTURE LLC, and RSBV PATHWAY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CREATIVE WEALTH MEDIA FINANCE CORP., and JASON CLOTH, an individual, <br><br> Defendants. | Case No. 2:24-cv-10030 TJH (RAOx) <br><br> **DECLARATION OF THOMAS E. SHUCK IN SUPPORT OF EX PARTE APPLICATION FOR AN ORDER CONTINUING HEARING ON MOTION FOR AN ORDER TO SHOW CAUSE RE; CONTEMPT** <br><br> [Filed concurrently with Ex Parte Application and [Proposed] Order] <br><br> Current Date:  August 19, 2026 <br> Time: 8:30 a.m. <br> Dept.  590 <br> **Requested Date: September 30, 2026** |

I, THOMAS E. SHUCK, declare as follows:

I am an attorney duly licensed to practice before all state and Federal Courts in the State of California. I am a shareholder in the firm of Parker, Milliken, Clark,

4938-5957-6514.1

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

O'Hara & Samuelian, counsel for Defendant Jason Cloth. I have personal knowledge of the facts below. If called, I could and would competently testify.

1. I have practiced law for over 47 years in business law and litigation with a substantial concentration in commercial law representing financial institutions. I have been a creditors bankruptcy lawyer for all my 47 years. I have also been a public and non-public arbitrator for the Financial Industry Regulatory Authority (FINRA) continuously since 1989. I have taken and defended dozens of judgment debtor examinations. I have prosecuted and defended several civil contempt proceedings.

**Notice.**

2. In accordance with Local Rule 7-19.1, I gave notice to Plaintiff's counsel by email and phone at around 4:00 pm on July 28, 2026.

**My Recent Entry in the Case.**

3. My former colleague of ten years Joseph Worley represented Mr. Cloth from last July until Mr. Worley retired in early February. My former partner of 30 years Gary Tokumori took over briefly and defended at the last hearing on April 29, 2026. He was appointed to the Los Angeles Superior Court bench as of May 31, 2026 and now sits as an IC judge in Long Beach.

4. On June 9, 2026 I read the attached transcript (Exhibit 1) from the hearing on April 29, 2026. There is much argument and dialogue particularly about the effect of Canadian law and proceedings but little clarity. It appears there was further examination after the hearing that may have been transcribed but we do not have a copy. Before his appointment, I asked Mr. Tokumori whether it was clear after the last examination what remained to be produced that was practically and legally reachable by Mr. Cloth, and he was not certain. As of his appointment Mr. Tokumori is ethically prohibited as a judicial officer from consulting with me.

5. Based on what little I understood of this case, and my years of experience with taking JD exams that rarely yield anything of value, but produce plenty of disappointment, I intended to simply get a "final list" from Plaintiff of exactly what it

- 2 -

4938-5957-6514.1

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

considered necessary and legally, and practically available. I would then have my client

one final time–after what I understand were multiple efforts -the efficacy of which I have

no personal knowledge but yielded some production along with persistent claims of

deficiency from Plaintiff–diligently try to get what if anything more he could, and produce

it, with an explanation under penalty of perjury why he could do no more.  As it turned

out the Court had the identical idea at the last hearing (**Exhibit 1**, p. 27):

> **THE COURT**: I'm wondering, Mr. Tokumori, I'm wondering if filing a motion on behalf of your client is the way for you to proceed, something to the effect of there are no assets here.
>
> And then I have something from Mr. Cloth, a declaration and with the kind of precision and clarity.  And then Mr. Jonelis can look at it and respond to it.  And that will then be your opportunity to put everything out on paper regarding assets.
>
> If it's your contention that Canada's the forum where this needs to be litigated, then you'll have an opportunity to do that.

6.    Knowing this, I planned to implement this final "sign off" during the  meet and confer process for any contempt motion which I was warned was inevitable, regardless of merit.  Hopefully, the finality of this declaration would dissuade Plaintiff from proceeding. If not in whole or in part successful, it would be left to the Court. But it was not to be.

**Plaintiff Prevents a Possible Resolution Through LR 7.3**

7.    Due to the enhanced seriousness of the threatened contempt motion, the mandatory  "substance" and "resolution" discussion provisions of LR-7.3 were paramount especially since Plaintiff's counsel knew I was new since the end of May when he got my firm's notice substituting me for Mr. Tokumori on May 29, 2026 (**Doc.40**).

8.    Five days later, on June 4, 2026, counsel wrote me. He proposed a date for a contempt hearing of July 22, 2026. I responded on July 9, telling him I was not available until after August 15, 2026 and asked him to propose dates then. He demanded to know why I was not available.  I considered this to be invasive and bullying and told him I was

PARKER MILLIKEN CLARK O'HARA & SAMUELIAN, A PROFESSIONAL CORPORATION

DECLARATION OF THOMAS E. SHUCK IN SUPPORT OF EX PARTE APPLICATION

4938-5957-6514.1

"working on an idea to end the serial examinations, but to do so would require some good faith by [his] client which so far has been deficient". I promised and did write a week later after again reviewing the transcript. I first proposed a stay to which the Court seemed to be receptive at the hearing. Exhibit 1, pages 27-29.  Here was my proposed:

> "…Despite the long time it has taken, and the sometimes understandable frustration your side has expressed, it appears we have happily reached the point where there are no more records or information to which Mr. Cloth has legal or practical access, or are not protected by privilege or Canadian law or the Court has said he need not produce here in California.  Remaining activities are in Canada. If you disagree, you can reserve rights to proceed here, despite the futility, we can stay the case, and let the Canadian activities finish as suggested by the Court. After that, if something truly still needs to be addressed here–a near zero possibility–we can discuss. There is no harm whatsoever. Only benefit.  Let me know if this is agreeable. If not, please tell me why".

I then following with my "sign–off" declaration proposal along the lines suggested by the Court at the April 29, 2026 hearing. **Exhibit 1, p. 27**. To arrange this, I asked counsel to:

> "Assuming you want to carry on, please take a hard look and tell me what you think truly remains of any value and accessibility after the last proceeding.  We will take hard look to see if we can help. *To end this, I think we can give you a declaration to certify completion to avoid another round of costly and unproductive examination, a/k/a beating a dead horse"* (Emphasis added).

Please see **Exhibit 2.**

9.    In response, counsel first mischaracterized the purpose of the stay which was to see if judgment set-aside activities in Canada might resolve matters here. It was not based on an assertion that Mr. Cloth is not living in California. Then, Plaintiff's counsel *did not even respond* to my request for his "final list". He did not say he could *not* provide it. Obviously, he could because he would need it for his long -threatened motion. Instead, he talked about the past and allegedly violated orders. He then said he would proceed with the motion.  Please see **Exhibit 3**. At that point it was clear to me Mr. Jonelis never

- 4 -

4938-5957-6514.1

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

intended to reconsider his client's contempt motion. The meet and confer was a charade. I told him so in response in Exhibit 3. The entire meet and confer chain is attached as **Exhibit 4.**

10. After over a month of silence counsel *did* provide what presumably is the final list --with thirteen categories of claimed deficiencies  but in the form of a sudden, massive contempt motion served on July 22, 2026 accompanied by much vitriol and *ad hominen* attacks, and references to alleged evidence in *682 pages*. This action made it impossible–clearly by design–to avoid the motion through the very declaration that would be submitted in opposition to get final closure, which is the exact aim of LR 7.3.  Then counsel inexplicably and uncivilly refused a brief 30-day continuance despite Mr. Cloth's counsel's irreconcilable scheduling conflicts, discussed next.

### Plaintiff Violated Civility  Guidelines for Scheduling Accommodations

11. This long–delayed delivery gave my client only *seven* days–during an extremely blocked schedule for me –with the seventh being a vacation day- to digest, investigate, confer with my new client, and reliably and competently prepare and respond. I immediately wrote counsel and explained my predicament:

> "Mr. Jonelis, after you rebuffed my attempt over a month ago on June 19, 2026 (see my June 18, 2026 **below** in this chain), to try and resolve your threatened motion for contempt by asking you to simply identify for me specific documents you believe can truly be produced, so I could investigate and provide you with a declaration on each item in response, you went silent for over a month.  Yesterday, July 22, 2026 at 4:15 pm you suddenly and stealthily served me with a massive contempt motion–including 682 page of exhibits, none of which I have ever seen before -for a hearing date on August 19, 2026, know full well that under the peculiarities of LR 7-9 since you waited to the last possible minute to serve papers you have had months to prepare, I would have a mere seven business days to analyze, work with my client, prepare and file a response.
>
> As an attorney you know is new to the complex and chaotic record here, I could not possibly prepare an adequate and competent defense in this amount of time, even if my calendar was clear.  Nor could you in my situation. But my calendar is

- 5 -

4938-5957-6514.1

PARKER MILLIKEN CLARK O'HARA & SAMUELIAN, A PROFESSIONAL CORPORATION

not clear. I have a filing this morning, followed by a medical appointment that will exhaust the rest of my day. Tomorrow, I must resume preparation of a complex evidentiary motion in the bankruptcy court that will consume my time until at least Wednesday. Then I am out of the office as of Thursday evening on a vacation with my family until **Aug 12, 2026.**

Whatever your intentions, please accommodate by moving the hearing to the last available date in September so we can try again to resolve the motion, and if not, give me what will still be scant time I need to competently, thoroughly, and vigorously respond to what amounts to a criminal proceeding. The local civility guidelines on scheduling accommodation certainly require your consent to this reasonable request. Please do so upon your receipt of this letter. Thank you."

Please see **Exhibit 5** hereto.

12. Plaintiff uncivilly refused my reasonable request in a long-winded response (**Exhibit 6**) based on one essential reason: that I had approved the approximate hearing date. This is disingenuous. Counsel knew that the hearing date was not the issue. The problem was simply since it waited to the last day to serve, I did not have time to prepare the opposition papers in the 7 days given to me under LR. 7-9.

13. There is no prejudice to the Plaintiff to allow Defendant's new counsel a small amount of additional time to respond to this serious motion. It is expected under the civility guidelines. If Plaintiff is so certain it can overcome the high evidentiary burden to proving with clear and convincing evidence that Mr. Cloth *willfully* violated the Court's orders, and it is appropriate to massively fine and jail him as requested, it should not fear giving Mr. Cloth full and fair opportunity–especially after all that has transpired–to defend and finally bring this long ordeal for all to a close–whatever that close may be. Instead, he would prefer to have me "wing it" and get heaped with further condemnation and claims of deficiency and non-compliance.

**What I Respectfully Ask of the Court**

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

- 6 -

14.     For all these reasons, I respectfully request on behalf of my new client that the Court enter an order continuing the hearing from August 19, 2026 to **September 30, 2026.** This will allow me to investigate more thoroughly the Canadian law issues including MLAT **(Exhibit 1, p. 34),** find out what records are truly accessible practical and legally, carefully prepare the most accurate "sign off " declaration possible, and complete all the other opposition pieces for filing and service on September 9, 2026 under LR 7-9.

I declare under the penalty of perjury, under the laws of the United States of California, that the foregoing is true and correct.

Executed this 28th day of July, 2026, at Los Angeles, California.

_____
THOMAS E. SHUCK, Declarant

DECLARATION OF THOMAS E. SHUCK IN SUPPORT OF EX PARTE APPLICATION

PARKER MILLIKEN CLARK O'HARA & SAMUELIAN, A PROFESSIONAL CORPORATION

4938-5957-6514.1

# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| ROBERT SCOT BUILDING VENTURE, LLC, | ) | CASE NO: 2:24-cv-10030-TJH-RAO |
| | ) | CIVIL |
| Plaintiff, | ) | |
| | ) | Los Angeles, California |
| vs. | ) | |
| | ) | Wednesday, April 29, 2026 |
| CREATIVE WEALTH MEDIA FINANCE CORP, ET AL, | ) | |
| | ) | (11:04 a.m. to 11:28 a.m.) |
| | ) | ( 1:21 p.m. to  1:58 p.m.) |
| Defendants. | ) | |

CONTINUED JUDGMENT DEBTOR EXAMINATION OF JASON CLOTH
[DKT.NO.32]

BEFORE THE HONORABLE ROZELLA A. OLIVER,
UNITED STATES MAGISTRATE JUDGE,
PRESIDING

**APPEARANCES**:                    SEE PAGE 2

Court Reporter:            Recorded; CourtSmart

Courtroom Deputy:          Teagan Snyder

Transcribed by:            Exceptional Reporting Services, Inc.
                           20079 Stone Oak Pkwy.
                           Ste. 1105-237
                           San Antonio, TX 78258
                           361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES:**

For Plaintiff:              KELSEY JORDAN LEEKER, ESQ.
                           DAVID BINDER JONELIS, ESQ.
                           Singer Weinsten Wolf & Jonelis
                           2049 Century Park East
                           Suite 2400
                           Los Angeles, CA 90067


For Defendant:             GARY TOKUMORI, ESQ.
                           Parker Milliken Clark, et al.
                           515 S. Figueroa St.
                           8th Floor
                           Los Angeles, CA 90071

3

**Los Angeles, California; Wednesday, April 29, 2026; 11:04 a.m.**

**(Call to Order)**

THE CLERK:  Calling case number 2:24-cv-10030, *Robert Scot Building Venture LLC versus Creative Wealth Media Finance Corp., et al.*

Starting with Plaintiff, would Counsel please make their appearances.

MR. JONELIS:  Good morning, David Jonelis and Kelsey Leeker of Singer, Weinstein, Wolf, and Jonelis, on behalf of Judgment Creditor.

MS. LEEKER:  Good morning.

THE COURT:  Good morning.

MR. TOKUMORI:  Good morning, Gary Tokumori on behalf of Judgment Debtor, Jason Cloth, who is also present in Court.

THE COURT:  All right.  Good morning.

All right, good morning, we're here for -- my understanding is two things, the continuing examination and then also the beginning for Ms. Fleming.  Is -- do we know, did Ms. -- is Ms. Fleming -- I thought Ms. Fleming was going to be here today?

MR. JONELIS:  May I --should I stand, Your Honor?

THE COURT:  Oh, as you wish.  I'm fine with you being -- remaining.

MR. JONELIS:  Yes, we were not able to locate and serve Ms. Fleming.  So that will be the subject of questioning

4

of the Judgment Debtor today, since my understanding was, at least as of the last time we met, she was his girlfriend --

THE COURT:  Okay.

MR. JONELIS:  -- live-in.

THE COURT:  Okay.

MR. JONELIS:  We just were not able to serve her yet and --

THE COURT:  Okay.

MR. JONELIS:  -- that's why she's not here.

THE COURT:  All right.  All right.

Well, Mr. Tokumori, welcome.  There's --

MR. TOKUMORI:  Thank you, Your Honor.

THE COURT:  -- there's a lot of history here.  I don't know how much of that you've been apprised of or been able to glean from the record.  But there is sort -- an ongoing issue regarding outstanding documents that the Judgment Creditor has requested.  It's been the subject of a lot of discussion and hearings.

The update that I have from Mr. Jonelis is that those documents remain outstanding.  I have a couple of thoughts about how to proceed today, but why don't I first hear from you before raising those suggestions?

MR. TOKUMORI:  Thank you, Your Honor.  A couple things is, we did go back and look at the list of documents that were requested.  Mr. Cloth does not have anything other

5

than what I just recently, yesterday, provided to Mr. Jonelis.

The additional issue that I believe my predecessor Counsel had raised was the fact that there are Canadian proceedings that are also going forward on behalf of the Judgment Creditor.  Those proceedings we believe are -- is where the requests for the Canadian-based documents are more appropriately made.  Because as I understand it, and I'm not an expert on Canadian law, but I understand that the privacy protections particularly for third parties, may be different there.  And the Court here would probably not have an opportunity to hear those objections and apply Canadian law.

So part of -- in addition to the fact that my client doesn't have the documents we believe that this is more appropriately pursued in the Canadian courts.  And I think that's, yeah, that's kind of the long and short of where we are.

**THE COURT:**  Okay.  Well I mean the Judgment Creditor, and I know you're not saying this, has a right to pursue it here in the U.S. courts.  And I had raised at the last hearing my concerns about this Court's -- how long the Court's arm is, to kind of bungle a law school expression.

So I still remain concerned about that.  I'm not -- I think that there is probably a way to proceed.  I don't think it's a fast way, but I think there are definitely ways to proceed on that.

6

But in the meantime I grow impatient with the lack of production. And based on my experience in other cases where things aren't moving at a pace that you would expect, one approach is to place the debtor under oath to lock in statements about what efforts were made, what's been located, what hasn't. It allows them, once a transcript is generated and I would imagine a renewed motion for contempt, which is never a great, I mean it's just never a good place to be.

That's my proposal for today. That we've -- we keep coming back and after a certain point you just have to place Mr. Cloth under oath. And maybe it's a short examination. You can come back and give me the gist of it. And then I don't want to kind of get ahead of myself but it may be that we're looking at a renewed motion for contempt.

**MR. TOKUMORI:** Your Honor, if I may just --

**THE COURT:** Yeah.

**MR. TOKUMORI:** -- address that briefly? I completely understand that. I've been in the creditors rights area for well over three decades now.

**THE COURT:** Oh.

**MR. TOKUMORI:** Typically, the way I've seen this proceed is if the Judgment Debtor, under oath, has testified that he or she has not been able to get the documents, typically Judgment Creditors will subpoena the information from the entities about which the Judgment Debtor has testified.

**EXCEPTIONAL REPORTING SERVICES, INC**

7

And in this case I think the issue we have, and I think Your Honor noted it, is that we're talking about Canadian entities. And from our perspective, it appears that the Judgment Creditor simply does not want to pursue it there. And is instead, you know, from our perspective, harassing the Judgment Debtor here in the United States.

I believe the Judgment Debtor has testified that there are no assets here. Any assets that are going to be presumably secured to satisfy the judgment, as I understand it, are going to be in Canada. So to the extent that there is going to be a drawn out process, it seems like it's to the disadvantage of my clients who may not have the ability to continue fighting on two international fronts.

And I would just ask the Court to consider the fact that the information that is being requested can easily be obtained through Canadian courts. And it's, if nothing else, it just seems unfair to put a Judgment Debtor through proceedings in two countries.

**THE COURT:**  Well I guess, I appreciate that and I do appreciate that. I think that there is the viewpoint of the Creditor and the Creditor's right to pursue enforcement of the judgment. And I feel like it's all in the details with these examinations. Maybe all the assets are in Canada, maybe. But there's certainly interesting facts that are popping up here.

And I think that's why we just have to proceed with

**EXCEPTIONAL REPORTING SERVICES, INC**

8

the examination and lock it in.  And if then the next step is serving these additional subpoenas, having to try to acquire information from Canada that will be I think a long procedure, But I don't think -- I guess I wouldn't call it unfair.  I think that it is simply enforcement.  And I don't see it.  I'm mindful of your description of it to be harassing, and I think that's where the Court plays sort of a refereeing role.

But I think, Mr. Jonelis, I think what should happen is the examination should begin.  I don't -- folks usually go to the attorney room.  And maybe it's on the TS level or the first floor.  Okay.  I think that's usually unlocked.  I'm going to be here for an 11:30 a.m.  I have something informally at 2:00 p.m.  But as long as you know how to reach us, I'm around.

So I will make the same request that I always do.  If you hit a roadblock in one category or area, please go to another, try to accomplish as much as possible.  And then I'm anticipating that we'll need to come back on the record later today.  I think actually I'd just like to have an update.  But I'll wait to hear from you.

Go ahead, Mr. Jonelis.

MR. JONELIS:  And just I may be heard on just a few small points, Your Honor, since we heard from Mr. Tokumori.

THE COURT:  Of course.

MR. JONELIS:  Again, I agree and my spiel this

9

morning was going to end with asking you how you'd like to proceed, so I appreciate you've told us.  And we are prepared with the Court Reporter to go do that.

THE COURT:  Wonderful.

MR. JONELIS:  As Your Honor may recall, however, the last time we did this, it did not end up well, and we did end up needing to have the Court's intervention.

THE COURT:  Yes.

MR. JONELIS:  So --

THE COURT:  Yes.

MR. JONELIS:  -- appreciate that.  And just to be clear, since we heard Mr. Tokumori out, we did issue subpoenas. We've been through that.  And the reason we're here --

THE COURT:  Right.

MR. JONELIS:  -- is because we've come full circle. Some of the stuff we're asking for are documents that Mr. Cloth testified in front of Your Honor that he "could easily access" or "had within his possession".  That's the issue.  A car that he's driving, a life insurance policy that he had.

THE COURT:  Right.

MR. JONELIS:  And so just to be clear that's the intent here.  We're not interested.  We do have a Canadian proceeding, and I can represent to Your Honor that Mr. Cloth's Canadian attorneys are throwing every possible roadblock up in that proceeding.  But we're here right now.  And we've got

10

questions and we're prepared.

The only housekeeping issue that I would ask, and we teed this up in what we filed as Docket 36 and it was the exhibit to that, is the Your Honor expressed concern about American Express.  If you remember just --

**THE COURT:**  Right --

**MR. JONELIS:**  -- there was a subpoena, American Express said we're not going to give you the documents unless Mr. Cloth authorizes it.  Your Honor said, "I'm not sure how the import of Canadian law applies to that".

I then reached out subsequent to when we were before you last time and spoke with the Canadian attorney to find out exactly her opinion on that.  And I have now written confirmation that there is no objection by Amex on jurisdictional grounds.  And so long as Mr. Cloth signs an authorization they have no problem releasing all of the records that have been requested, which would be every credit card statement.

So we would just renew our request, since we're here.  We don't believe there's any more argument or law on this.  We have written confirmation.  Amex says, "give us a written authorization, we'll do it with no objection".  Mr. Cloth, as we previously discussed, is within this Court's jurisdiction to ask him to sign documents.  Whether those documents can then be enforced in Canada is obviously a different issue.

11

But we're not asking this Court to enforce a document in Canada.  We're simply asking this Court to order Mr. Cloth to sign an authorization that then it's our burden to take to American Express.  And if they object, again that would be a motion at that point to file in Canada.  But they will not, as they've told us.  And they will give us the credit card statements that, based on everything we've gotten so far which are the bare minimum, including for the record what we received last night, was just a few additional bank statements that merely show that hundreds of thousands of dollars have come in. They come into Mr. Cloth's account one day and they disappear later that day without any explanation or record.

We are -- have no doubt that the credit card statements that Mr. Cloth has fought so hard through his attorneys not to give to us will shine a light on what's actually happening with the finances, what accounts are being used to pay off those, which if in Canada, we can then go up to Canada and subpoena,  But there is jurisdiction, as we see it, here simply to order Mr. Cloth to sign an authorization.  And there is an appetite at Amex to honor that authorization without jurisdictional objection.  And we have that here today again, Your Honor.

**THE COURT:**  All right.

Mr. Tokumori, is your client willing to sign the authorization?

**MR. TOKUMORI:** No, Your Honor. And one of the biggest issues is, while Mr. Jonelis pointed out that American Express in Canada has apparently waived a jurisdictional issue, that doesn't address the privacy issue with respect to any names that may show up in the statements, or any of the American Express records.

And that would be a concern, because should my client be required to sign something that can simply be provided to American Express and not through a Court proceeding in Canada, there -- the potential for ringing a bell that can't be un-rung. Once information is provided by American Express - Canada, then there's the problem of the information is out there. And presumably my client would bear some potential liability to these third parties for having allowed the information to get out.

And as I understand it, the judgment in this case has not been domesticated there. So it seems like we're two steps removed from doing something that would fall in line with a court order for enforcement of the judgment that was issued in Florida and domesticated in California. So I believe we're -- I believe Mr. Jonelis has jumped the gun on how far the American Express consent letter reaches in this case.

**THE COURT:** I'm not sure I followed everything you were saying there, Mr. Tokumori. So you're raising privacy concerns as -- in terms of the purchases?

13

MR. TOKUMORI:  In terms of any third party names that --

THE COURT:  Appear on --

MR. TOKUMORI:  -- show up in there.

THE COURT:  -- an Amex statement?

MR. TOKUMORI:  In the statements or any of the -- whatever records might be produced by American Express, for example, payment records.  There would be third-party, at a minimum, financial privacy concerns.  There, yeah, there may very well be, yeah, payments to, for example, a convenience store that are going to be reflected, which don't have those issues.

But to the extent that there's maybe payments to individuals that have the ability to, for example, Apple Pay through American Express, there could be disclosure of those names.  And those primarily individuals would have privacy rights that would potentially be impinged without there having been a court proceeding, an opportunity for anyone, whether it's Mr. Cloth or the third parties, to object.

THE COURT:  Well how is -- if you peel away the overlay of Canada, the international component, this is something that happens pretty routinely.  Bank account statements, credit card statements, and the privacy concerns.  Perhaps you're purchasing something that's sensitive.  I feel like those -- there's a balancing I suppose but they would have

14

to yield to the Judgment Creditor's rights.

We wanted to have some type of protective order in place.  That's I think easily craftable.  But I don't see how the identities of these purchases -- while recognizing right we all live full and varied lives, but that you can protect that.  But I certainly think it's -- it appears to be full square within the rights of the creditor to look at that and follow the money, if you will.

**MR. TOKUMORI:**  Except, Your Honor, we're talking about a Canadian entity and privacy concerns that exist under Canadian law, which has not been addressed here, nor are either Counsel in the case versed in Canadian law.  But there are, as I understand it, differences that may have, you know, Your Honor referenced that it is common to have, for example, American Express in the United States, documents produced.

Typically, those are produced in the context of either subpoena with notice to, for example, consumer.  In which case there is an opportunity and there's guard rails to protect privacy interests.

What Counsel is asking for is a letter of authorization to be given to a Canadian entity based only on the Canadian Entities Counsel's representation that they're not going to raise jurisdictional issues.  But it's silent as to the privacy concerns.

And typically what would --

15

**THE COURT:** Right.

**MR. TOKUMORI:** -- happen in the United States is that there would be an opportunity to redact information. And that could be done here but it's still our position that that should be pursued in a Canadian Court and that any processes that need to be followed are going to be followed within the realm of a Canadian Court issuing a Canadian order or subpoena to a Canadian entity.

And I think that's where there's a distinction in this particular case. I've represented creditors for a good number of years and I understand what Mr. Jonelis is trying to get to. But I believe that there's steps that are missing in the protection of the Judgment Debtor's and third parties' rights in this instance.

**THE COURT:** All right. This is -- continues to be I think a complicated issue. Let me just say one thing. And I do -- we've tamped on the brakes on that, Mr. Tokumori.

There are other things though that have been very frustrating. And I mean it's an easy one to keep coming back to, but there's, you know, allegedly Mr. Cloth is saying there's no income, no assets. And then, you know, I keep -- we still can't put to rest the Porsche. The driving of the Porsche, so.

And I think that it's -- I know you're pretty recent to this. Those decades of experience, maybe you know what --

what's going on.  I've been doing this for about a decade, and it seems like this should have been resolved many hearings ago. So -- and I think it's in those instances where everybody gets frustrated because, well yes there is this very complicated wrinkle of the Canadian law.  It's not true for everything that Mr. Jonelis is seeking.

MR. TOKUMORI:  And, Your Honor --

THE COURT:  So I don't know how much you can just -- and so, and maybe Mr. Cloth just wants to fight everything. But then I think your statements about how it's unfair to have to defend this in both Courts doesn't carry the same weight when it just seems to be across-the-board resistance, where some of it could be easily resolved.  And we've spent a lot of time here in Court.

MR. TOKUMORI:  And I understand that, Your Honor.  My only point was -- my point was directed solely to the American Express issue.

THE COURT:  Appreciate that.  You're right, you're right, you're right.  And I wanted to I think put it -- that in a bigger landscape here.

MR. TOKUMORI:  And I appreciate that, Your Honor.

THE COURT:  Okay.  Mr. Jonelis?

MR. JONELIS:  Your Honor, just very briefly on that point, because I know time is running out.  But we did subpoena, Mr. Cloth was given consumer notice.  There was an

17

opportunity to object.  American Express did object.  They sent a letter saying the terms by which they would produce.  And that's why we're here.

So this isn't a situation of us running into Court and saying for the first time, here's an authorization let's skirt the rules.  This is an example of Mr. Cloth attempting to skirt the rules and us coming back into Court and saying, here's a way to fix the skirting.  That's all --

**THE COURT:**  Right.

**MR. JONELIS:**  -- we're asking for.

**THE COURT:**  I too think on the Canadian issue, Amex Canada that it is a more nuanced.  And I'm -- at least I'm very mindful of not overstepping my authority as a Court here in Los Angeles.  So why don't we go ahead.

I will say, Mr. Cloth, you were previously sworn in. You continue, because the examination is continuing and ongoing.  You continue to be under oath.  So when you're answering Mr. Jonelis' questions, you'll have your attorney there.  You'll be able to consult with him.

But I do want to remind you that when you're answering those questions it says, if you are here in Court, you've done that on the witness stand.  And so it's very, very important that you answer honestly to the best of your recollection.  Any material misrepresentations or omissions could expose you to two things that you don't want.  You're

18

already -- this is already very difficult and stressful but it could potentially expose you to a criminal charge of perjury.

So and this is already stressful. So just -- you have your attorney, you're allowed to take breaks to ask him questions. Clarify what Mr. Jonelis is seeking. But it's really important that you remember you are under oath.

Understood, sir?

JUDGMENT DEBTOR: Understood.

THE COURT: Okay. Okay, all right. All right. Thank you very much. We're in recess.

MR. JONELIS: I'm sorry, Your Honor, one question.

THE COURT: Yeah.

MR. JONELIS: Your availability for the rest of the afternoon, I missed it, I believe you mentioned --

THE COURT: So --

MR. JONELIS: -- 11:30 a.m.?

THE COURT: -- I have an 11:30 a.m. and then I have something informally at 2:00 p.m. that will last about 20 minutes. But otherwise I'm here until 4:30 p.m., I think that's a reasonable time. Court staff likes to go home. The folks downstairs like to I think start shutting down the courthouse. Okay.

MR. JONELIS: Thank you, Your Honor.

THE COURT: Thank you.

MR. TOKUMORI: Thank you, Your Honor.

19

THE CLERK:  Court is in recess.

**(Recess at 11:28 a.m.; reconvened at 1:21 p.m.)**

THE COURT:  We're back on the record.  We're -- counsel for the creditor is present and Mr. Cloth is present, represented by counsel.

All right.  So we have an update.  Why don't I begin with Mr. Jonelis?

MR. JONELIS:  Yes, Your Honor.  Apologies for calling you back in here, but we're unfortunately running into somewhat of the situation as we had the last time, with the exception that more profanities have been thrown across the table this time than last time at me.

But we have a situation here where we're not getting forthright testimony.  And it's also clear that the Debtor has failed to disclose things.

It came out this morning when the Debtor was actually answering questions that there's another account, bank account, that exists that even though we were told that all statements had been given to us, all of a sudden there's now this account that has U.S. dollars in it instead of Canadian dollars that's at the Royal Bank of Canada.

And the Debtor first said he'd be happy to give us the statements but --

MR. CLOTH:  It's not at Royal Bank of Canada.

MR. JONELIS:  Sorry.  I --

EXCEPTIONAL REPORTING SERVICES, INC

MR. CLOTH:  You're misspeaking.

MR. JONELIS:  At CIBC in Canada, the same as his other account where he did give us the statements.

But there -- the problem is on the statements we have, there's large amounts of money, including $200,000 in the last month where money is going into the account and then out of the account.

But when we've asked the Debtor where did this money go, he said, I don't remember.  He didn't remember a lot of things, including things that happened yesterday.

He wasn't willing to tell us where he's staying in town other than that it's with a friend.  He said his wallet is with the friend.

Then he told us he didn't know where his cellphone was.  But it was just disclosed to us during the break that his cellphone's actually here in court with his attorney.

And so there's just -- the reason I'm telling you this, Your Honor, is we're just running into problems.  We're having more nonanswers than we are having answers.

And we think it would be more productive, as burdensome as it may be on the Court, to conduct the remainder of this exam perhaps after your 2:00 o'clock calendar, just to do it here and get through some of the questions that are necessary.

Mr. Cloth also indicated that he is never going to

come back to California again, that this is the last time we will ever be able to question him.  And so we're very concerned.

He's also when we asked him there was a news media article in the Toronto recently which we presented to him where he is quoted as saying he never intends to pay Mr. Harris, my client, any money.

And I said, is that true.  And he said, I'm not answering.  And I said, well, do you intend to pay the judgment.  And he refused to answer that.  I said, well, is this an accurate quote in here.

The point is, what's evident is we have somebody here who's saying -- openly he's refusing to ever come back.  He has failed to disclose material assets.

He is failing at least without you on the bench sitting next to him, Your Honor, to tell us where hundreds of thousands of dollars of money was transferred within the last month.

He did admit now that he sold his Porche automobile and that he's willing to tell us where that went.  But we need an order for that so that that can be commemorated.  He sold it for hundred thirty thousand dollars.

And we just thought most efficiently, rather than going down, going through more of this and then having to come back up here, we could just address it in one fell swoop over

the course of hopefully an hour, including with respect to the lack of explanation for the documents that have not been provided to us, notwithstanding your Court order.

So that way if Mr. Cloth genuinely is never intending to come back here, at least we can engage in some housekeeping at the end that hopefully can help us move the needle, Your Honor.

THE COURT:  All right.  Mr. Tokumori.

MR. TOKUMORI:  Your Honor, I will point out that the questioning bordered on the line of badgering.  So the fact that Mr. Cloth may have said things out of anger should be considered.

Also, counsel said there's over $200,000 in transfers.  Half of those were reversed entries so that it's probably half of that.  So it might be a hundred thousand dollars.

With respect to the documents from CIBC reflecting U.S. dollars, Mr. Cloth did testify that the accounts at this bank were the last accounts he had access to.

He had been debanked at all other financial institutions in Canada, and within the last two weeks was debanked at this institution.

So while he's represented that he will try to get those documents, there is a question as to whether or not he will be able to access it because now he's been debanked from

23

every financial institution in Canada in which he has held funds.

THE COURT:  And what do you mean when you say debanked?

MR. TOKUMORI:  The banks -- typically when an account is debanked is they no longer want to do business with you and they close your accounts and ask you to take your money elsewhere.

And the problem he has is if it's the same as it is in the U.S., there's typically a list that's circulated among financing institutions which is almost like a blacklist which will typically prevent other financial institutions from opening accounts.

So he's in a bit of a quandary with respect to bank accounts.

MR. CLOTH:  Your Honor, may I speak?

THE COURT:  Should talk to your attorney first about what you want to say.

MR. CLOTH:  Oh, no, it's just about --

THE COURT:  Oh.

MR. CLOTH:  -- the account.

THE COURT:  Oh, okay.

MR. CLOTH:  The U.S. dollar account is just a holding account for when a person needs to transfer Canadian dollars to U.S. dollars.  It's not a typical bank account.

24

So it was only used if I had to transfer money like this all came up because of the lawyer's fees.  And Mr. Jonelis brought up the point, well, why don't any of these amounts show up on your bank statements?  It says Jason Cloth, and here's Jason Cloth statement, and it doesn't show up.

And then I remembered it's U.S. dollars.  So I would have had to have transferred for argument's sake 14,000 Canadian dollars into a U.S. holding account for 10,000, and then transfer the money out that way.  And so it would be that 10,000 that would show up.

I don't have a problem producing those statements.  I just might have a problem actually producing them because in the last couple of weeks, I been debanked from CIBC.

It's not that I don't want to provide Royal Bank statements or TD Bank statements.  I cannot get them.  They don't exist for me.  I was debanked from both of those institutions.

It's not like this $20 million judgment hasn't followed me around.  It just has.

**THE COURT:**  So I guess and what about -- I feel like on that, Mr. Cloth can provide a declaration and some corroborating or substantiating materials if that is in fact correct.

What about the sale of the Porche?

**MR. CLOTH:**  So I had two cars at the same time.  One

25

was my ex-wife's and one was mine.  One was a single-payment lease and one was a purchase outright.  And they were purchased not far from each other.

And I just got the car confused.  So, yes, was I driving it in L.A.?  Yes.  You know, I had only retained my lawyer the day before.  And, you know, I was scared somebody was just going to take my car.

I probably shouldn't have said what I said.  It wasn't until I spoke to my Canadian attorney where he said this judgment is not recognized in Canada and you can go and spend your money in Canada any way that you see fit.

This judgment is not recognized in Canada.  No financial institution is going to seize your accounts.  They've got to go through a -- essentially another trial, which is what we are going to do, to have this recognized in Ontario.

And so the Porche was registered in Ontario.  It was mine.  I sent it back and it was sold.  Money was transferred to a Canadian bank account.  I'll find out where that went.  And it was spent on things in Canada.

THE COURT:  So you sent it back to Canada.

MR. CLOTH:  The car was sent back to Canada, yes.  And currently I have no vehicle.

THE COURT:  Okay.

MR. TOKUMORI:  Your Honor, if I may just to add to that, I understand the judgment creditor's position in terms of

26

wanting to get information.

But it seems a little excessive to ask where Mr. Cloth is staying when he's not paying for anything and he's staying with a friend.  That seems to border on harassment to find that information.  It doesn't lead to the enforcement of the judgment.

And also, in the bigger picture, everything that's been testified to and the documents that have been produced and the information that counsel has asked for are all assets that are housed in Canada with financial institutions in Canada.

The vehicles were purchased in Canada.

**MR. CLOTH:**  They're registered in Canada.

**MR. TOKUMORI:**  There hasn't been anything identified in the United States or in California or in Los Angeles that can satisfy the judgment.

So, again, we urge that this is something that should be pursued in Canada.  And the judgment creditor has the right to pursue it here.

But I believe we've reached the point where Mr. Cloth, even if there may be some inconsistencies, has demonstrated that there are no assets in California to be applied to the judgment.

So this seems to be borderline harassment when the judgment creditor does not want to instead go to Canada to enforce the judgment there where Mr. Cloth said that's where

his assets are.

MR. CLOTH:  But they are enforcing it.  Like there's an active case.  I've got a lawyer defending me.

And unfortunately -- and I don't have anything against Mr. Jonelis and his team.  He's doing whatever he needs to do for Mr. Harris.

And in case it's lost on you guys, it's not like if they go to court in Canada and I lose, I win something, right. I'm in a worse position.  Now I've lost and they can come after whatever I do have in Canada.

But all my Canadian lawyers are saying is this judgment is not recognized at all in Canada.

THE COURT:  I'm wondering, Mr. Tokumori, I'm wondering if filing a motion on behalf of your client is the way for you to proceed, something to the effect of there are no assets here.

And then I have something from Mr. Cloth, a declaration and with the kind of precision and clarity.  And then Mr. Jonelis can look at it and respond to it.  And that will then be your opportunity to put everything out on paper regarding assets.

If it's your contention that Canada's the forum where this needs to be litigated, then you'll have an opportunity to do that.

MR. TOKUMORI:  And just to clarify, would this be a

motion to suspend the or --

THE COURT:  Sometimes it's called a stay.  And I was -- I'm -- I think a stay might be difficult here.  But I guess what I am -- the natural instinct is to ask Mr. Jonelis to do it.

But, number one, this is unusual.  Number two, I -- right with the competing cases proceeding in two different countries.

And I also feel like in terms of the Court being able to evaluate it, I need clear, consistent statements from Mr. Cloth.

And then Mr. Jonelis will be able to respond to it.  It'll then be Mr. Cloth's opportunity to explain all of this, explain why he thinks Canada is the place.

So we could call it a motion to suspend, declaration of no assets here in the United States.  Mr. Jonelis will have an opportunity to say either that's not -- it's already been proven false or challenge that.

And then I think that will give me an opportunity to decide whether or not it makes sense for us to persist here.  So --

MR. TOKUMORI:  I can do that, Your Honor.

Just for background, I would point out that this judgment originated in Florida.  So we're -- we've already moved to one forum.  And as our motion would show, that there

29

are no assets here to obtain to enforce the judgment.

And, you know, I understand Your Honor would like it in the form of a motion.  But it's basically everything has pointed to the assets being in Canada.

Mr. Cloth is a Canadian resident.  He's not living in California.  So I agree that this probably should be at minimum suspended or stayed.

**THE COURT:**  Well, I just -- I think that part of what's been so difficult is not getting the clarity I think on the record.

And so that why -- that's why I'm thinking if you file it, right, then it's you -- with all the benefits and burden that that brings with it, you'll have the opportunity to put everything in and make your case about why, and demonstrate that the assets are in fact in Canada and not here.  So --

**MR. CLOTH:**  Sorry, Your Honor, is it not true that in Canada, those lawyers are going to ask me the same questions about worldwide assets?  Like I would assume that that's --

**THE COURT:**  I don't know.

**MR. CLOTH:**  Well, I would assume that that's standard, right?  Like they're like --

**THE COURT:**  But that doesn't mean that we can't ask it here.

**MR. CLOTH:**  No, no.  I --

**THE COURT:**  Right.

30

MR. CLOTH:  -- understand.  But --

THE COURT:  Right.

MR. CLOTH:  -- I don't have anything.  There's no proof that I own anything in the United States at all.

THE COURT:  Well, can I just interrupt you there.  Gosh, Mr. Cloth, I mean, maybe your attorney can tell you this.  Gosh, if I had a dollar for --

MR. CLOTH:  No, I --

THE COURT:  -- every time somebody comes --

MR. CLOTH:  I understand.

THE COURT:  -- in here and says I don't have any assets.

And the creditor has the right to probe the veracity of that.  And what --

MR. CLOTH:  I understand.

THE COURT:  -- you might call an asset or not an asset is in fact an asset.

MR. CLOTH:  But every question he's asked has been about my Canadian bank account, who are the payees, who are the payors.

And my Canadian lawyer said, you cannot send these statements this way.  You've got to redact everything.  So now I've got one lawyer telling me to do one thing and, very respectfully, I've got Your Honor up there possibly telling me I've got to do something else.

EXCEPTIONAL REPORTING SERVICES, INC

31

I'm caught in the middle here when in fact, you know, really what's happening is they're using this proceeding to get access to information that they are not entitled to in Canada.

**THE COURT:** Well, --

**MR. CLOTH:** No judge has said that they are entitled to any of my account information.

**THE COURT:** All right. Mr. Jonelis, you've been patient.

**MR. JONELIS:** Your Honor, I'm sorry. I'm a little bit surprised as to the tenor of where this is going from opposing counsel.

I appreciate Your Honor's concerns. But just to reiterate, we have a U.S. judgment based on funds that were paid in the U.S. to somebody in the U.S.

Jurisdiction was challenged by Mr. Cloth already and rejected not only by the Florida district court but by the court of appeals. So jurisdiction's not at issue.

And it would be patently unfair to allow Mr. Tokumori to file such a motion without us having yet had the opportunity to question Mr. Cloth for the very evidence that would refute it.

For example, you know, he says it's up there. That's precisely what we haven't gotten answers to. All of a sudden this morning turns out there's this -- I'll give you an example.

32

His Porche was purchased two years ago from -- or four years ago from a company called Personal Capital Management Corp.  Even though we've asked Mr. Cloth for all of his corporations and bank accounts, he never disclosed that.

And I asked him this morning on the record, well, what is this?  And he goes, oh, I don't use that any more. That's -- that hasn't been used for years.  That was just holding insurance monies.

I said, are you sure?  You understand you're under oath?  And he said, yes.  I said, are you sure?  Yes.  And I said, so why was that account used to pay your attorneys just a few months ago?  And he goes, well, maybe some money funneled through it.

And I said, from where?  And he goes, I don't know. Well, what would tell you?  The statements.  Well, do you have the statements?  I just closed that account two weeks ago --

**MR. CLOTH:**  I disclosed --

**MR. JONELIS:**  -- is what he said --

**MR. CLOTH:**  Hold on a second!

**THE COURT:**  No, --

**MR. CLOTH:**  You're --

**THE COURT:**  -- Mr. Cloth.

**MR. CLOTH:**  You're saying --

**THE COURT:**  Mr. Cloth, --

**MR. CLOTH:**  -- things that are --

33

THE COURT: -- you don't get to speak. You --

MR. CLOTH: So he can just say things that are wrong.

THE COURT: Yes. You are represented by an attorney and your attorney speaks on your behalf. And if you cannot conduct yourself appropriately, then I'm going to issue an order --

MR. CLOTH: No, no, I'm --

THE COURT: -- to show cause.

MR. CLOTH: -- sorry, Your Honor. Sorry.

THE COURT: So I guess here's the conundrum that we have. He keeps maintaining that his assets are in Canada. I don't know if the Personal Capital Management Corp., is that in the United States?

MR. JONELIS: What we know is it's paying expenses here in the United States that Mr. Cloth lied about. So --

THE COURT: Can you serve a subpoena on it? Is there --

MR. JONELIS: No, because it's a -- the point is we don't know where it is because when we've asked questions about it, we're just told, oh, that hasn't been in operation for years, and then it turns out it has been.

What I'm trying to get at, Your Honor, is that we're not done as far as being able to find out. There are assets here. There is a car that he drove here that supposedly he sold for a hundred thirty thousand dollars.

34

And to say that we're not allowed to see where that money went when he specifically said he could tell us that -- what is the account?  There's a distinction between being able to collect assets and being able to discover assets.

THE COURT:  So if -- but if we keep circling back to it's in Canada, then I need law, I need some discussion telling me that this Court can issue a subpoena that is enforceable and not proceed via MLAT regarding what Canada -- I mean, the treaty between the United States and Canada is -- I don't know if you're familiar with it, but Canadians assert very, very vigorous protections.

MR. JONELIS:  I understand your -- but the issue is we believe there is accounts here in the United States.

And this is by -- the point is that when we see these Canadian bank statements, and there's hundreds, probably millions if we look back to what was money that's just coming out of that account to unspecified locations.

Mr. Cloth has testified today that he has the ability to show the transactions.  That's not a subpoena.  That's his own personal ability as he sits there in the United States. He's just refusing to do so.

And our suspicion, bolstered by the fact that he hasn't told us the information -- if it was just as simple as it's up in Canada, he'd say, here's all my accounts, you can't get them.  And I get that.  We can retain Canadian counsel.

35

But it's the inability and refusal to tell us about the assets that makes me suspicious and belief in good faith that there is something here.  And we are getting close.

It's the refusal just to sign a document on himself that would allow statements, his own statements that he can get here in the United States, to be shown.

What's on there, Your Honor?  If it's up in Canada, we don't get it.  But if there's now money that's been going into an account here, again, we're -- Mr. Cloth says he doesn't have any other bank accounts.

But yet hundreds of thousands of dollars in the last few months have come out of the one account that he identified before today -- now there's another account -- and gone somewhere.

It wasn't transferred into his pocket.  And so the question becomes, what if that's a U.S. account?  What if Mr. Cloth isn't telling us that?

And you've seen yourself, Your Honor, the fact his inability to tell the truth.

So all we would ask is the opportunity with you on the bench and him sitting --

**THE COURT:**  Right.

**MR. JONELIS:**  -- here to --

**THE COURT:**  Right.

**MR. JONELIS:**  -- ask him one last set of questions to

36

indicate this so we have an ability to respond.  Because otherwise he'll put in a declaration saying, everything's up in Canada, and all we have is his lack of information and his perjury.  That's --

THE COURT:  Right.

MR. JONELIS:  -- all we have.

THE COURT:  Right.  So I did that once.  I'm not going to do that again in terms of the consumption of the Court's resources.

And I don't know if you read the papers in terms of what is happening in the federal courts and how we are inundated.

So I don't have the time to do that.  I have a 2:00 p.m., and I have to get back to some matters that are -- go to folks' liberty interests.

So I think this is what I'm going to do.  I think that you're going to have to order the transcript, renew the motion for contempt.

And here's what I'm going to say to Mr. Cloth.  You have your attorney here.  I'm going to take a look at the transcript.

And if I find that there's been inconsistencies and I'm concerned about the good faith or lack thereof in that, the Court has a lot of tools in its we'll call it sort of contempt toolkit.

37

And the Court can impose sanctions, all sorts of sanctions.  That's the last thing you want.

MR. CLOTH:  I don't want sanctions, Your Honor.  Like I know this --

THE COURT:  I'm going to ask your attorney just to speak on your behalf because especially because this involves skating closer to contempt.

I appreciate that you're saying you're hearing different statements.  You know, I'm -- I don't know if you said this, but I'm never coming back, I'm not going to ever pay --

MR. CLOTH:  But I'm not an American citizen, Your Honor.  Like --

THE COURT:  Well, but I'm not sure of the relevance of that.  I mean, you can come to this country.  You've --

MR. CLOTH:  I can't --

THE COURT:  -- conducted business here --

MR. CLOTH:  -- come to this country.  It took me almost three hours to get through customs, and it was only because of your order that I was able to come here.  I'm not able to travel so freely any longer.

THE COURT:  I don't understand that.

MR. CLOTH:  Because there's only a certain amount of time that you can spend in the United States.

THE COURT:  Oh, okay.  All right.  On some -- okay.

38

**MR. JONELIS:** Your Honor, at a minimum we would just like then to have the opportunity this afternoon to proceed to get that additional testimony about what he's done because we haven't gotten there yet. We just broke --

**THE COURT:** Okay. Why don't you do that? Yeah, you have until 4:30. Okay. All right.

And let me just say because we -- if the motion for contempt is renewed, Mr. Cloth, then you will be ordered to come back. So --

**MR. TOKUMORI:** Your Honor, before we go back down, you were starting to say you're going to get the transcript and you --

**THE COURT:** Oh, I assume --

**MR. TOKUMORI:** -- were going to detail --

**THE COURT:** -- I'll get the transcripts, a lot -- all of the transcript. So --

**MR. TOKUMORI:** And I wasn't sure if you were going to identify any next steps.

**THE COURT:** Well, I think what we'll do is I'll just depending on how it goes, maybe it'll, you know, go better this afternoon.

But then Mr. Jonelis will have to renew the motion for contempt and then we'll just have a briefing schedule and then a hearing back in court.

For motions for contempt, depending on exactly what

it is if the Court finds it, if it's contempt in front of this Court, then I can -- I have remedies that I can order.

If they're not directly in front of the Court, then it goes to the district judge for the district judge to decide what sanctions, if any, to impose.

So I -- this sounds unrealistic. But I don't know if there's a possibility of a settlement if -- some type of disposition. But this is Mr. Jonelis and his client aren't going away. So --

MR. CLOTH: So what am I supposed to do if I take advice from my Canadian lawyers where we're actively in a court case with this exact party telling me I can't do something, and now here you're telling me that I must do something?

THE COURT: Well, number one, I'm not sure that that's -- I'm not obviously a party. I find it hard to believe that an attorney would tell you to violate --

MR. CLOTH: Oh, no, nobody's --

THE COURT: -- or solicitor would --

MR. CLOTH: -- telling to violate. But they want information on my transactions, which my lawyer said, no. Under the privacy act of Canada, you know, they're not entitled to that information. So how do we resolve it?

MR. TOKUMORI: Your --

THE COURT: Again,

MR. TOKUMORI: Your Honor, if I could just add one

40

comment in response --

THE COURT: Sure.

MR. TOKUMORI: -- to Mr. Jonelis. Everything that he's uncovered, despite the fact that he may not have agreed with how my client expressed the information, has pointed to Canada.

There's been nothing that's come up that's shown any assets in California. And I don't think Mr. Jonelis can point to anything, other than the car was in California. But I believe that it even had Canadian plates on it.

MR. CLOTH: Yes.

MR. TOKUMORI: So, you know, there comes a point where understandably my client is frustrated that he's answering the same questions about assets in Canada.

And even if, you know, we're talking about the transactions that Mr. Jonelis just referenced about payments coming into the U.S. to law firms, they're still coming out of Canadian banks. And that's what the information shows.

THE COURT: Right.

MR. TOKUMORI: And all that needs to happen is those institutions can be subpoenaed in Canada and all the protections afforded to Canadian entities and individuals would be addressed there.

Whereas absent some showing of assets in California, we feel it's an overreach to ask this Court to instruct

anything with respect to Canadian assets.  So --

**THE COURT:**  Right.  Can I just say this is where I think having -- for Mr. Jonelis and myself having the benefit of being here from the beginning, it's taken a long time to get to here, right, information that I think could have been provided, supplied many hearings ago.

And I think that's the friction that you're encountering with the Court at least with me, which is that the -- I'm -- it appears to be a lack of candor.  I'm not going to appear -- it's an appearance.

I haven't seen all of the transcripts.  But things that one would expect the average person to recall were not recalled.

And so it may be what Mr. Cloth is explaining -- is trying to say is I'm getting conflicting information, I'm confused, I'm just on -- feeling defensive, maybe I feel badgered.

But nevertheless, the -- when the information feels withheld or not completely supplied, then I think Mr. Jonelis reasonably is saying I should be able to ask more questions because look what we got today.

And, you know, I'm a bit surprised about the sale of the other vehicle.

So I -- maybe this is an opportunity to talk to your client to advise him about the Court's -- what the Court can do

here, what perhaps would need to be established to persuade Mr. Jonelis and his client that in fact really all of the assets are in Canada and that that's where energy and money should be concentrated, foreign affair.

So that's the unfortunate part of this.

MR. TOKUMORI:  I understand that.  I think there's frustration with my client trying to figure out how many ways can he say he has no assets in the U.S. and in California, so that's --

THE COURT:  That's fair.

MR. TOKUMORI:  -- part of it.

And I understand the Court's sentiment about the candor issue.

One question I did have is will the Court entertain a motion for suspension or stay?

THE COURT:  Well, I think Mr. Jonelis is objecting to that right now so --

MR. JONELIS:  I am, Your Honor.

THE COURT:  Okay.  So then we'll table that and see what happens this afternoon and then go from there.

MR. JONELIS:  Last final thing.  There are a few things that Mr. Cloth has agreed to give us.  Is the transcript of that sufficient?  I just don't want to burden --

THE COURT:  Yeah.

MR. JONELIS:  -- the Court.

43

THE COURT:  That's fine, yeah.

MR. JONELIS:  We'll just put that in before you and say this is what he agreed and he didn't do it.

And then finally just one last time I wanted to reiterate we do have Mr. Cloth here, we do have American Express in writing before the Court saying they don't object jurisdictionally.

We have had notice and a proper opportunity to object to Mr. Cloth, including the consumer notice.  We just reiterate our request that Mr. Cloth be ordered before he leave today to sign that.

I mean, this is American Express.  It is credit card statements that exist.  And they're clearly going to show what his bank statements don't, which is what is he spending his money on and where is it coming from.

And, again, if it's up in Canada and we can't get the money, that's a different issue.  But American Express is willing to give it, and Mr. Cloth has had an opportunity to object.

And there is no privacy concerns at this juncture.  And we have the authorization with us --

THE COURT:  Right.

MR. JONELIS:  -- to present to you today, Your Honor.

THE COURT:  So that is something I just -- I couldn't rule from the bench on that.  I would have to brief it, have it

44

briefed and look at the research on the intersection of privacy laws and Canadian law.

MR. TOKUMORI: Your Honor, I would also point out that the authorization that counsel's referring to is with respect to American Express Canada. It's not American Express in the United States.

So what American Express in Canada said was it was not going to raise the jurisdictional issue. So clearly there's -- it's a Canadian entity that's being -- that Mr. Cloth is being requested to instruct to give the documents without concern for whatever privacy concerns attach in Canada.

So I think that's where there's an issue here. If it was American Express in the United States, that would probably be a different story. But it's not.

MR. JONELIS: And the reason we're here, Your Honor, is because Mr. Cloth was ordered as part of your document order on October 31st to give us the statements himself and he's refused to do so.

So that's why this even -- Your Honor actually denied our initial request --

THE COURT: Okay. Well --

MR. JONELIS: -- for him to sign the authorization --

THE COURT: Right. And --

MR. JONELIS: -- based on the fact he was ordered. It's only because he's now refused to give us something that

45

admittedly he could get --

THE COURT:  Well, I think that circles back to the -- that's why we're hearing about debanking today, right; is that right that --

MR. TOKUMORI:  Well, --

THE COURT:  -- he can't access those?

MR. TOKUMORI:  -- I think the other issue is that I don't know when the Court's order came down because I wasn't involved at that time.

But as I understand it, it was probably before Mr. Cloth had Canadian lawyers look at what the implications might be.

And as I understand it, there's the privacy implications that while he may have said, yeah, I'll provide it, at that point he wasn't aware of what the consequences would be.

MR. JONELIS:  And that's just not true, Your Honor, because as the record reflects, Mr. Cloth said the reason that Your Honor didn't order the documents on the day of the last exam is he wanted an opportunity to consult with his Canadian counsel.  This is all on the record.

And he was given that opportunity.  In fact, we received objections by way of Canadian counsel on privacy grounds that we then responded to, filed with the Court.

And the Court, after considering everything, issued

46

its October 31st order saying these are the documents of which the Court didn't grant every request.  The Court did deny some.

But with respect to the ones that were granted, they were done over the objection of Mr. Cloth provided through his Canadian counsel, including on privacy grounds.

And it's because we're not asking for collecting in Canada.  We're just asking for information about his assets, his own bank statements, his own life insurance.

We haven't gotten this afternoon to another car that we have documentation that he has.  But, you know, we'll get to all of that.  We just --

**THE COURT:**  All right.

**MR. JONELIS:**  -- would like the opportunity to find this stuff out.

**THE COURT:**  All right.  I understand.  And I am not going to order him to sign that piece of paper today.  I'm just not comfortable with that.

All right.  I have a 2:00 o'clock so hopefully you'll be able to make progress in the next couple of hours.  Thank you.

**MR. JONELIS:**  Well should we check in with you when it's over, Your Honor?

**THE COURT:**  You don't have to like come up here but if you could email, that would be helpful.

**MR. JONELIS:**  Okay.  And then again the door is open

47

for us based on what we get today to file a motion for renewed contempt.

THE COURT:  Renewed, yes.

MR. JONELIS:  Okay.  Thank you, Your Honor.

THE COURT:  Correct.  Thank you.

THE CLERK:  Court is in recess.

(This proceeding was adjourned at 1:57 p.m.)

48

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    __June 9, 2026__

        **Signed**                                                    **Dated**


*TONI HUDSON, TRANSCRIBER*

# EXHIBIT 2

## Thomas E. Shuck

| | |
|---|---|
| **From:** | Thomas E. Shuck |
| **Sent:** | Thursday, June 18, 2026 1:20 PM |
| **To:** | 'David Jonelis' |
| **Cc:** | 'Kelsey J. Leeker' |
| **Subject:** | RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) – Motion for Contempt |

Mr. Jonelis,

As promised, I reviewed the situation. Despite the long time it has taken, and the sometimes understandable frustration your side has expressed, it appears we have happily reached the point where there are no more records or information to which Mr. Cloth has legal or practical access, or are not protected by privilege or Canadian law or the Court has said he need not produce here in California.  Remaining activities are in Canada. If you disagree, you can reserve rights to proceed here, despite the futility, we can stay the case, and let the Canadian activities finish as suggested by the Court. After that, if something truly still need to be addressed here—a near zero possibility-- we can discuss. There is no harm whatsoever. Only benefit.  Let me know if this is agreeable. If not, please tell me why. Assuming you want to carry on, please take a hard look and tell me what you think truly remains of any value and accessibility after the last proceeding.  We will take hard look to see if we can help. To end this, I think we can give you a declaration to certify completion to avoid another round of costly and unproductive examination, a/k/a beating a dead horse.

You seem eager to seek "contempt". I have been involved in such proceedings on both sides over the years.  The word "contempt" rolls easily off the tongue and is thrown around because it sounds menacing, and from the applicant's standpoint is enticing, but when you get to a hearing the facts that seem so alarming as they buzz around in one's head often fall flat. It is very hard to surmount the "clear and convincing" standard and get an order for a quasi-criminal punishment. Courts are reluctant. Given all the factors here, the prospects are not strong. This reality may not dissuade you. That is ok.  But let's first try to put an end to this California sideshow cooperatively and realistically.

Thank you.

Thomas E. Shuck
Attorney



Parker, Milliken, Clark, O'Hara & Samuelian, a Prof. Corp.
515 South Figueroa Street, 8th Floor
Los Angeles, California 90071
tel.  (213) 683-6623
fax. (213) 683-6669
tshuck@pmcos.com

CONFIDENTIALITY NOTICE: This email and any files attached hereto (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521) and other applicable law, (b) may contain confidential and/or legally privileged information, and (c) is for the sole use of the email recipient that was intended by the sender. If you are not the intended recipient, any disclosure, copying, distribution or the taking of any action based or in reliance on the contents of this email is strictly

# EXHIBIT 3

**Thomas E. Shuck**

| | |
|---|---|
| **From:** | David Jonelis <djonelis@singerlaw.com> |
| **Sent:** | Thursday, June 18, 2026 1:38 PM |
| **To:** | Thomas E. Shuck |
| **Cc:** | Kelsey J. Leeker |
| **Subject:** | RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) – Motion for Contempt |

 External (djonelis@singerlaw.com)

Graymail Spam Phish More...

Thomas:

The record speaks for itself as to your client's failure to comply with the Court's order in this California proceeding, as well as his intentional efforts to hide his assets from collection both here and in the prior Florida proceeding.  I would also note that you (perhaps unintentionally) omitted my most recent email to you from the below chain.  I have copied it back in below so that there is a complete record of our correspondence to present to the Court.

As to the issue of Canada, I assume you are aware that your client has <u>very</u> recently taken the position, under oath no less, that he is a resident of California for the purpose of delaying Canadian proceedings against him.  This will be presented through evidence in our forthcoming contempt motion.  Accordingly, your client's continued attempt to likewise delay this proceeding by claiming that he is a resident of Canada is unfounded.

We appreciate that contempt is a high burden to meet, and I assure you that we don't throw that word around lightly.  However, we feel confident, given the specific facts and evidence in this specific case, that our motion is well-founded and will be successful.  Accordingly, unless your client intends to produce the records ordered by the Court over half a year ago, or unless you believe that there is something further to be discussed in that regard (in which case I would request that you please pick up the phone and call me to discuss), we intend to proceed forward with the contempt motion, to be heard on August 19 per our below meet and confer correspondence on the scheduling front.

All rights continue to be reserved.

Regards,
David

**DAVID B. JONELIS, ESQ.**
SINGER WEINSTEN WOLF & JONELIS LLP
(310) 556-3501; DJONELIS@SINGERLAW.COM
**--Please note my new email address—**



THIS MESSAGE IS FOR THE INTENDED RECIPIENT ONLY AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW AND MAY NOT BE DISSEMINATED. IF YOU ARE NOT THE INTENDED RECIPIENT OR RECEIVED THIS IN ERROR, NOTIFY THE SENDER IMMEDIATELY AND DESTROY ALL COPIES AND ATTACHMENTS. THANK YOU.

## Thomas E. Shuck

| | |
|---|---|
| **From:** | Thomas E. Shuck |
| **Sent:** | Friday, June 19, 2026 6:23 AM |
| **To:** | David Jonelis |
| **Cc:** | Kelsey J. Leeker |
| **Subject:** | RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) – Motion for Contempt |

Mr. Jonelis,

I detected from your first letter that your perfunctory offer to "meet and confer" on your threatened motion was not genuine. Boy, did you just prove me right.

Thank you.

Thomas E. Shuck

Attorney



Parker, Milliken, Clark, O'Hara & Samuelian, a Prof. Corp.

515 South Figueroa Street, 8th Floor

Los Angeles, California 90071

tel.  (213) 683-6623

fax. (213) 683-6669

tshuck@pmcos.com

CONFIDENTIALITY NOTICE: This email and any files attached hereto (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521) and other applicable law, (b) may contain confidential and/or legally privileged information, and (c) is for the sole use of the email recipient that was intended by the sender. If you are not the intended recipient, any disclosure, copying, distribution or the taking of any action based or in reliance on the contents of this email is strictly prohibited. If you have received this email in error, please immediately notify the sender by email or telephone at (213) 683-6500 and permanently delete the email and attachments.

# EXHIBIT 4

**Thomas E. Shuck**

| | |
|---|---|
| **From:** | Thomas E. Shuck |
| **Sent:** | Friday, June 19, 2026 6:23 AM |
| **To:** | David Jonelis |
| **Cc:** | Kelsey J. Leeker |
| **Subject:** | RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) - Motion for Contempt |

Mr. Jonelis,

I detected from your first letter that your perfunctory offer to "meet and confer" on your threatened motion was not genuine. Boy, did you just prove me right.

Thank you.

Thomas E. Shuck

Attorney



Parker, Milliken, Clark, O'Hara & Samuelian, a Prof. Corp.

515 South Figueroa Street, 8th Floor

Los Angeles, California 90071

tel.  (213) 683-6623

fax. (213) 683-6669

tshuck@pmcos.com

CONFIDENTIALITY NOTICE: This email and any files attached hereto (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521) and other applicable law, (b) may contain confidential and/or legally privileged information, and (c) is for the sole use of the email recipient that was intended by the sender. If you are not the intended recipient, any disclosure, copying, distribution or the taking of any action based or in reliance on the contents of this email is strictly prohibited. If you have received this email in error, please immediately notify the sender by email or telephone at (213) 683-6500 and permanently delete the email and attachments.

**From:** David Jonelis <djonelis@singerlaw.com>

**Sent:** Thursday, June 18, 2026 1:38 PM

**To:** Thomas E. Shuck <tshuck@pmcos.com>

**Cc:** Kelsey J. Leeker <kleeker@singerlaw.com>

**Subject:** RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) - Motion for Contempt

 External (djonelis@singerlaw.com)

Graymail Spam Phish More...

Thomas:

The record speaks for itself as to your client's failure to comply with the Court's order in this California proceeding, as well as his intentional efforts to hide his assets from collection both here and in the prior Florida proceeding.  I would also note that you (perhaps unintentionally) omitted my most recent email to

1

you from the below chain.  I have copied it back in below so that there is a complete record of our correspondence to present to the Court.

As to the issue of Canada, I assume you are aware that your client has <u>very</u> recently taken the position, under oath no less, that he is a resident of California for the purpose of delaying Canadian proceedings against him.   This will be presented through evidence in our forthcoming contempt motion.  Accordingly, your client's continued attempt to likewise delay this proceeding by claiming that he is a resident of Canada is unfounded.

We appreciate that contempt is a high burden to meet, and I assure you that we don't throw that word around lightly.  However, we feel confident, given the specific facts and evidence in this specific case, that our motion is well-founded and will be successful.  Accordingly, unless your client intends to produce the records ordered by the Court over half a year ago, or unless you believe that there is something further to be discussed in that regard (in which case I would request that you please pick up the phone and call me to discuss), we intend to proceed forward with the contempt motion, to be heard on August 19 per our below meet and confer correspondence on the scheduling front.

All rights continue to be reserved.

Regards,
David

**DAVID B. JONELIS, ESQ.**
SINGER WEINSTEN WOLF & JONELIS LLP
(310) 556-3501; DJONELIS@SINGERLAW.COM
**--Please note my new email address—**

**SWWJ**

THIS MESSAGE IS FOR THE INTENDED RECIPIENT ONLY AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW AND MAY NOT BE DISSEMINATED. IF YOU ARE NOT THE INTENDED RECIPIENT OR RECEIVED THIS IN ERROR, NOTIFY THE SENDER IMMEDIATELY AND DESTROY ALL COPIES AND ATTACHMENTS. THANK YOU.

**From:** Thomas E. Shuck <tshuck@pmcos.com>
**Sent:** Thursday, June 18, 2026 1:20 PM
**To:** David Jonelis <djonelis@singerlaw.com>
**Cc:** Kelsey J. Leeker <kleeker@singerlaw.com>
**Subject:** RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) - Motion for Contempt

Mr. Jonelis,
As promised, I reviewed the situation. Despite the long time it has taken, and the sometimes understandable frustration your side has expressed, it appears we have happily reached the point where there are no more records or information to which Mr. Cloth has legal or practical access, or are not protected by privilege or Canadian law or the Court has said he need not produce here in California.  Remaining activities are in Canada. If you disagree, you can reserve rights to proceed here, despite the futility, we can stay the case, and let the Canadian activities finish as suggested by the Court. After that, if something truly still need to be addressed here—a near zero possibility-- we can discuss. There is no harm whatsoever. Only benefit.  Let me know if this is agreeable. If not, please tell me why. Assuming you want to carry on, please take a hard look and tell me what you think truly remains of any value and accessibility after the last proceeding.  We will take hard look to see if we can help. To end this,

I think we can give you a declaration to certify completion to avoid another round of costly and unproductive examination, a/k/a beating a dead horse.

You seem eager to seek "contempt". I have been involved in such proceedings on both sides over the years.  The word "contempt" rolls easily off the tongue and is thrown around because it sounds menacing, and from the applicant's standpoint is enticing, but when you get to a hearing the facts that seem so alarming as they buzz around in one's head often fall flat. It is very hard to surmount the "clear and convincing" standard and get an order for a quasi-criminal punishment. Courts are reluctant. Given all the factors here, the prospects are not strong. This reality may not dissuade you. That is ok.  But let's first try to put an end to this California sideshow cooperatively and realistically.

Thank you.


Thomas E. Shuck
Attorney



Parker, Milliken, Clark, O'Hara & Samuelian, a Prof. Corp.
515 South Figueroa Street, 8th Floor
Los Angeles, California 90071
tel.  (213) 683-6623
fax. (213) 683-6669
tshuck@pmcos.com



CONFIDENTIALITY NOTICE: This email and any files attached hereto (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521) and other applicable law, (b) may contain confidential and/or legally privileged information, and (c) is for the sole use of the email recipient that was intended by the sender. If you are not the intended recipient, any disclosure, copying, distribution or the taking of any action based or in reliance on the contents of this email is strictly prohibited. If you have received this email in error, please immediately notify the sender by email or telephone at (213) 683-6500 and permanently delete the email and attachments.

**From:** David Jonelis
**Sent:** Wednesday, June 10, 2026 12:27 PM
**To:** Thomas E. Shuck tshuck@pmcos.com
**Cc:** Kelsey J. Leeker kleeker@singerlaw.com
**Subject:** RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) - Motion for Contempt

Thomas:

Your aggressive tone continues to be unwarranted given that we are simply trying to meet and confer with you as directed by the court.

As evidenced by the below chain (which we can present to the Court if necessary), your accusation that we are somehow bullying/badgering you is completely unfounded.  Again, we are merely trying to meet and confer on a hearing date.

As to your inference that my client has somehow failed to act in good faith, need I remind you that it is your client who was found liable for defrauding my client out of millions of dollars and who has refused to satisfy the judgment entered against him in two separate states.  And it is your client who has repeatedly perjured himself in front of the Court, and who has violated the Court's document production order

3

(which is the very reason why we were invited to file a contempt motion in the first place). Accordingly, the record is crystal clear that it is your client who has acted in bad faith here. My client is simply trying to collect what your client owes him under federal law.

In any event, notwithstanding your inappropriate tone and your refusal to substantiate your unavailability prior to August 15, we will go ahead and notice the contempt motion for Wednesday, August 19 (which is the soonest available date for the hearing based on your stated availability).  Given that we have blindly accommodated your alleged conflict, we trust that the hearing will proceed forward on that date.


Regards,
David


Regards,
David


**DAVID B. JONELIS, ESQ.**
SINGER WEINSTEN WOLF & JONELIS LLP
(310) 556-3501; DJONELIS@SINGERLAW.COM
**--Please note my new email address—**



THIS MESSAGE IS FOR THE INTENDED RECIPIENT ONLY AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW AND MAY NOT BE DISSEMINATED. IF YOU ARE NOT THE INTENDED RECIPIENT OR RECEIVED THIS IN ERROR, NOTIFY THE SENDER IMMEDIATELY AND DESTROY ALL COPIES AND ATTACHMENTS. THANK YOU.


**From:** Thomas E. Shuck <tshuck@pmcos.com>
**Sent:** Wednesday, June 10, 2026 7:28 AM
**To:** David Jonelis <djonelis@singerlaw.com>
**Cc:** Kelsey J. Leeker <kleeker@singerlaw.com>
**Subject:** RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) - Motion for Contempt

Mr. Jonelis,
You have my availability for any hearing.  Do not badger or bully me or my client. I am working on an idea to end these serial examinations.  Doing so will require good faith by your client which this far has been deficient.
I will write you by next Wednesday or Thursday.
Thank you.

Thomas E. Shuck
Attorney



Parker, Milliken, Clark, O'Hara & Samuelian, a Prof. Corp.
515 South Figueroa Street, 8th Floor
Los Angeles, California 90071
tel.  (213) 683-6623
fax. (213) 683-6669
tshuck@pmcos.com

4

CONFIDENTIALITY NOTICE: This email and any files attached hereto (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521) and other applicable law, (b) may contain confidential and/or legally privileged information, and (c) is for the sole use of the email recipient that was intended by the sender. If you are not the intended recipient, any disclosure, copying, distribution or the taking of any action based or in reliance on the contents of this email is strictly prohibited. If you have received this email in error, please immediately notify the sender by email or telephone at (213) 683-6500 and permanently delete the email and attachments.

**From:** David Jonelis <djonelis@singerlaw.com>
**Sent:** Tuesday, June 9, 2026 1:09 PM
**To:** Thomas E. Shuck <tshuck@pmcos.com>
**Cc:** Kelsey J. Leeker <kleeker@singerlaw.com>
**Subject:** RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) - Motion for Contempt


Thomas,

We are taken aback somewhat by the tone and content of your email.  For example, we do not understand what rights you are "reserving," given that we are simply trying to meet and confer with you on a hearing date concerning a motion that the Court specifically invited us to file.   This should not be a controversial or contentious endeavor.   And as to the hearing date, while we are willing to be reasonable on the scheduling front, simply stating "no" to our proposed hearing date and then claiming that you are not available until mid-August – without any explanation whatsoever – is not meeting and conferring in good faith.

Let's please not get off on the wrong foot here, as we had a fine relationship with your predecessor.  If you are not available until August 15, please provide us with a reason why.   And please clarify why you are "reserving rights" with respect to this narrow meet and confer issue.

We look forward to hearing from you soon.

Thank you.


Regards,
David


**DAVID B. JONELIS, ESQ.**
SINGER WEINSTEN WOLF & JONELIS LLP
(310) 556-3501; DJONELIS@SINGERLAW.COM
**--Please note my new email address—**

SWWJ

THIS MESSAGE IS FOR THE INTENDED RECIPIENT ONLY AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW AND MAY NOT BE DISSEMINATED. IF YOU ARE NOT THE INTENDED RECIPIENT OR RECEIVED THIS IN ERROR, NOTIFY THE SENDER IMMEDIATELY AND DESTROY ALL COPIES AND ATTACHMENTS. THANK YOU.


**From:** Thomas E. Shuck <tshuck@pmcos.com>
**Sent:** Tuesday, June 9, 2026 12:44 PM
**To:** Kelsey J. Leeker <kleeker@singerlaw.com>
**Cc:** David Jonelis <djonelis@singerlaw.com>
**Subject:** RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) - Motion for Contempt

Ms. Leeker,

No. Reserving rights, please propose dates that work for you in mid-August after the 15th. I have availability then.

Thank you.


Thomas E. Shuck
Attorney

**PARKER MILLIKEN**
*Est. 1913*

Parker, Milliken, Clark, O'Hara & Samuelian, a Prof. Corp.
515 South Figueroa Street, 8th Floor
Los Angeles, California 90071
tel. (213) 683-6623
fax. (213) 683-6669
tshuck@pmcos.com


CONFIDENTIALITY NOTICE: This email and any files attached hereto (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521) and other applicable law, (b) may contain confidential and/or legally privileged information, and (c) is for the sole use of the email recipient that was intended by the sender. If you are not the intended recipient, any disclosure, copying, distribution or the taking of any action based or in reliance on the contents of this email is strictly prohibited. If you have received this email in error, please immediately notify the sender by email or telephone at (213) 683-6500 and permanently delete the email and attachments.

**From:** Kelsey J. Leeker <kleeker@singerlaw.com>
**Sent:** Tuesday, June 9, 2026 12:13 PM
**To:** Thomas E. Shuck <tshuck@pmcos.com>
**Cc:** David Jonelis <djonelis@singerlaw.com>
**Subject:** RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) - Motion for Contempt


Hi Thomas,

Just following up on the below – can you please confirm the July 22 hearing works for you? If we do not hear from you, we will assume that you have no objection to this date.

Kelsey

**From:** Kelsey J. Leeker
**Sent:** Thursday, June 4, 2026 6:27 PM
**To:** tshuck@pmcos.com
**Cc:** David Jonelis <djonelis@singerlaw.com>
**Subject:** RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) - Motion for Contempt

Hi Thomas,

David and I represent Robert Scot Building Venture LLC and RSBV Pathway LLC. We understand you now represent Jason Cloth, so we look forward to working with you on this matter going forward. As your predecessor Gary may have told you, at the last debtor's exam, the Court invited us to re-file our motion for contempt against Mr. Cloth. Now that we have the transcript from that exam, we intend to do so shortly.

6

While we believe we have met and conferred on these issues extensively with Mr. Cloth's prior counsel, much of which happened on the record in Court, please let us know if you believe our meet and confer requirements have not been met and/or if you have any further information to provide to us about Mr. Cloth's non-compliance with the Court's Orders (ECF Nos. 21 & 22). If either of those is the case, please let us know when you are available for a meet and confer call in the next week.

Please also let us know if you are available for the hearing on this Motion on July 22 at 10:00 a.m.

Thank you,
Kelsey

----------------------------------------------------------------
**KELSEY J. LEEKER**
**Attorney**
SINGER WEINSTEN WOLF & JONELIS LLP
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Office: (310) 556-3501 x 235
E-Mail: kleeker@singerlaw.com
----------------------------------------------------------------
THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW AND MAY NOT BE PUBLISHED OR DISSEMINATED IN WHOLE OR IN PART.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE LAW OFFICES OF SINGER WEINSTEN WOLF & JONELIS LLP IMMEDIATELY BY TELEPHONE (310-556-3501) OR E-MAIL (REPLY TO SENDER'S ADDRESS), AND THEN DESTROY ALL COPIES OF THIS COMMUNICATION AND ANY ATTACHED FILES.  THANK YOU.

# EXHIBIT 5

## Thomas E. Shuck

| | |
|---|---|
| **From:** | Thomas E. Shuck |
| **Sent:** | Thursday, July 23, 2026 8:02 AM |
| **To:** | 'David Jonelis' |
| **Cc:** | Kelsey J. Leeker |
| **Subject:** | RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) – Motion for Contempt |

Mr. Jonelis,

After you rebuffed my attempt over a month ago on June 19, 2026 (see my June 18, 2026 **below** in this chain), to try and resolve your threatened motion for contempt by asking you to simply identify for me specific documents you believe can truly be produced, so I could investigate and provide you with a declaration on each item in response, you went silent for over a month. Yesterday, July 22, 2026 at 4:15 pm you suddenly and stealthily served me with a massive contempt motion-- including 682 page of exhibits, none of which I have ever seen before -for a hearing date on August 19, 2026, know full well that under the peculiarities of  LR 7-9 since you waited to the last possible minute to serve papers you have had months to prepare,  I would have a mere seven business days to analyze, work with my client, prepare and file a response.

As an attorney you know is new to the complex and chaotic record here, I could not possibly prepare an adequate and competent defense in this amount of time, even if my calendar was clear.  Nor could you in my situation. But my calendar is not clear. I have a filing this morning, followed by a medical appointment that will exhaust the rest of my day.  Tomorrow,  I must resume preparation of a complex evidentiary motion in the bankruptcy court that will consume my time until at least Wednesday. Then I am out of the office as of Thursday evening on a vacation with my family until **Aug 12, 2026.**

Whatever your intentions, please accommodate by moving the hearing to the last available date in September so we can try again to resolve the motion, and if not, give me what will still be scant time I need to competently, thoroughly, and  vigorously respond to what amounts to a criminal proceeding. The local civility guidelines on scheduling accommodations certainly require your consent to this reasonable request. Please do so upon your receipt of this letter.

Thank you.

Thomas E. Shuck
Attorney



Parker, Milliken, Clark, O'Hara & Samuelian, a Prof. Corp.
515 South Figueroa Street, 8th Floor
Los Angeles, California 90071
tel.  (213) 683-6623
fax. (213) 683-6669
tshuck@pmcos.com

CONFIDENTIALITY NOTICE: This email and any files attached hereto (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521) and other applicable law, (b) may contain confidential and/or legally privileged information, and (c) is for the sole use of the email recipient that was intended by the sender. If you are not the intended recipient, any

# EXHIBIT 6

## Thomas E. Shuck

| | |
|---|---|
| **From:** | Kelsey J. Leeker <kleeker@singerlaw.com> |
| **Sent:** | Thursday, July 23, 2026 11:35 AM |
| **To:** | Thomas E. Shuck |
| **Cc:** | David Jonelis |
| **Subject:** | RE: RSBV v. Cloth / Case No. 2:24-cv-10030 TJH (RAOx) - Motion for Contempt |
| **Attachments:** | 36-1 - EX A TO NOTICE OF NON-COMPLIANCE 042326.pdf |

 **Caution**: External (kleeker@singerlaw.com)

Sensitive Content   Details

Safe  Spam  Phish  More...

Hi Thomas,

As you are well aware, we first reached out to you to meet and confer on a hearing date for this motion over two months ago, on June 4. We first proposed the date of July 22, but you stated that you were unavailable and requested a hearing date in "mid-August after the 15th."  Despite the fact that you would not provide us with an explanation as to why you could not be available for a hearing before mid-August, we accommodated your request and notified you *six weeks ago* on June 10 that "we will go ahead and notice the contempt motion for **Wednesday, August 19** (which is the soonest available date for the hearing based on your stated availability)."  Indeed, in that same email six weeks ago, we stated, "[g]iven that we have blindly accommodated your alleged conflict, *we trust that the hearing will proceed forward on that date*." In your response to that email, you did not give any indication that the August 19 hearing date no longer worked for you. Then on June 18, we again reiterated that "we intend to proceed forward with the contempt motion, *to be heard on August 19* per our below meet and confer correspondence on the scheduling front." We have not heard from you since.

Therefore, to say that we "suddenly and stealthily served [you] with a massive contempt motion," is disingenuous to say the least. We told you repeatedly what we intended to do and when we intended to do it. We did not act in any way intending to jam you up, and to the contrary, have been very accommodating of your requests and your schedule. If your schedule or availability had changed, it was your responsibility to inform us of this prior to our deadline to file the motion based on the hearing date *you* had chosen. For these reasons, we decline your request to continue the hearing date that we previously agreed to.

As for your request that we "identify for [you] specific documents [we] believe can truly be produced," this has been done repeatedly for almost a year. The list of documents Mr. Cloth was ordered to produced was first entered by the Court on October 31, 2025, *nine months ago* (ECF No. 21). We had met and conferred on this list with Mr. Cloth's prior counsel for weeks before that.

After Mr. Cloth failed to produce documents responsive to 12 of the 14 categories of documents ordered to be produced by the Court on January 7, 2026, we further met and conferred with Mr. Cloth's counsel about the documents that had not produced. These meet and confer communications are memorialized in the Joint Status Report filed with the Court (ECF No. 27). We then sent a final meet and confer letter on April 13, 2026,

prior to Mr. Cloth's second debtor's examination, memorializing the status of Mr. Cloth's document production, explaining in detail what documents were outstanding, and asking "whether Cloth intends to produce any further documents or provide any further explanations" as to why he cannot produce documents responsive to the Court's order (ECF No. 36-1). We received no response to this meet and confer letter, which was filed with the Court, but which is also attached here for your reference. Indeed, Mr. Cloth had the further opportunity to explain at his second debtor's exam why he had not produced documents responsive to the Court's order. As you will see in the motion, Mr. Cloth's purported explanations were woefully deficient. As Mr. Cloth's counsel, we expect that you are familiar with his case file, the docket and the record, and are therefore aware of these exhaustive meet and confer efforts.

We look forward to reviewing Mr. Cloth's opposition papers.

Kelsey